UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

DUDLEY TEEL, as Personal Representative
of the Estate of SUSAN TEEL, deceased,

Plaintiff,

v.

DEPUTY SHERIFF JONATHAN
LOZADA, in his individual capacity, and
SHERIFF DERYL LOAR, in his
individual and official capacities,

Defendants.

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff, DUDLEY TEEL, as Personal Representative of the Estate of SUSAN TEEL ("Mrs. TEEL"), deceased, by and through undersigned counsel, sues Defendants and alleges:

## INTRODUCTION

1. This is an action involving violation of Mrs. TEEL's federal civil rights, by Defendants acting under color of state law, and contains state wrongful death causes of action pursuant to this Court's concurrent and pendant jurisdiction. The aggregate amount of damages claimed by the Plaintiff against all Defendants is in excess of seventy-five thousand dollars ($75,000.00).

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and the Florida Wrongful Death Act, Florida Statutes § 768.16 – 768.28.

1

3. Plaintiff's claims for relief are predicated on 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to Plaintiff by the Constitution and laws of the United States and by 42 U.S.C. § 1988 which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

4. Venue is appropriate in this Court as the acts alleged to have been committed by Defendants against Plaintiff's decedent occurred wholly within Indian River County, Florida.

5. A written notice of Plaintiff's claims asserted was submitted to the Indian River County Sheriff's Office ("IRCSO") and to the Florida's Department of Financial Services on or about August 14, 2017, a copy of which is attached hereto as Exhibit A. No response was received from IRCSO by Plaintiff, therefore the allegations contained therein are deemed denied by operation of law.

6. The Plaintiff seeks an award for damages for the wrongful death of Mrs. TEEL, loss of services, protection, care, assistance, companionship, comfort, guidance, counsel and advice, and for funeral and burial expenses under 42 U.S.C. § 1983 and the Florida Wrongful Death Act. Plaintiff asserts all available claims for damages pursuant to Florida Statute § 46.021.

7. The Plaintiff further seeks an award for punitive damages, court costs, and attorney fees in connection with the federal claims.

8. All conditions precedent to bringing this action and for recovery of attorney's fees under state and federal law, including those set forth in Fla. Stat. § 768.28(6)(a), has occurred or have been satisfied.

## PARTIES

9. Plaintiff, Dr. DUDLEY TEEL, as Personal Representative, is a citizen of the State of Florida residing in Indian River County, where he works as an emergency room physician, and is otherwise *sui juris*.

10. The decedent, Mrs. TEEL, at all times material, was a resident of Indian River County, Florida.

11. The decedent, Mrs. TEEL, died of injuries from gunshot wounds sustained on or about July 26, 2017, at her residence in Indian River County, Florida.

12. Dr. DUDLEY TEEL was married to Mrs. TEEL for 41 years and as her spouse, he is a survivor as defined under the Florida Wrongful Death Act.

13. Defendant, DERYL LOAR, (hereinafter "LOAR"), is the Sheriff of Indian River County, Florida and is otherwise *sui juris*. At all material times, LOAR was in charge of the Indian River County Sheriff's Office ("IRCSO"), its agents and employees, including supervising, training and establishing policies, customs and procedures to conform their conduct to the United States Constitution and Florida common law. LOAR is sued in his official capacity.

14. Defendant, DEPUTY SHERIFF JONATHAN LOZADA (hereinafter "LOZADA"), at all times material to this action, was employed by the IRCSO as a deputy sheriff. He is sued in his individual capacity.

15. At all times material, Defendants were acting under color of state law.

## UNDERLYING FACTS

16. On or about July 26, 2017, Sara Gordon, Mrs. TEEL's daughter, called 9-1-1 to request help for her mother, who was exhibiting suicidal behavior.

17. In response to Sara's call, Indian River County Public Safety Dispatch announced over the radio there was a threat of suicide at the Teel residence.

18. LOZADA responded to dispatch he was enroute to the Teel residence.

19. At the time LOZADA arrived at the Teel residence, he was aware Mrs. TEEL had been drinking alcohol, had possibly taken narcotics and possessed a knife.

20. Deputy Samuel Earman also announced he was enroute to the Teel residence

21. LOZADA was the first IRCSO deputy to arrive at the Teel residence. He knocked on the front door and opened the door before anyone answered.

22. While still just outside the front door, LOZADA was met by Dr. DUDLEY TEEL.

23. LOZADA and Dr. TEEL spoke briefly, long enough for Dr. TEEL to inform LOZADA that his wife Mrs. TEEL was upstairs, confirming she had tried to kill herself, and confirming she was in possession of a knife.

24. At that time LOZADA knew deputy Earman would be arriving momentarily, but chose to go upstairs before Earman arrived and could provide support.

25. At that time LOZADA knew Mrs. Teel was not of sound mind, not thinking rationally and likely was under the influence of alcohol, prescription drugs, or both.

26. At no time before going upstairs did LOZADA have any reason to believe Mrs. TEEL posed a threat to anyone other than herself.

27. LOZADA did not attempt to communicate with Mrs. TEEL in any way before going upstairs.

28. Instead, LOZADA drew his weapon, then walked up the stairs to the second floor, placing himself in a potential harmful situation without any attempt to assess if Mrs. TEEL was alive and if she was a threat to anyone other than herself.

29. Once he reached the top of the stairs, LOZADA took several steps where he saw Mrs. TEEL lying face down on the bed, inside the master bedroom to his right.

30. Mrs. TEEL was not violent, was not committing any crimes, nor was there any probable cause that Mrs. Teel had committed any crimes.

31. Mrs. Teel was lawfully in a place she had a right to be, and at that moment, was not presenting a danger to herself or others.

32. Walked into the master bedroom, placing himself in a potential danger zone, if it was true that Mrs. Teel had a knife as reported by her husband.

33. LOZADA identified himself and demanded of Mrs. TEEL: "Let me see your hands."

34. Mrs. TEEL, who was 5'2", 120 pound, and 60 years old, rose from the far side of the bed after hearing LOZADA's command.

35. When Mrs. Teel got off the bed, LOZADA could see she was holding a large knife.

36. Mrs. Teel began walking around the bed toward LOZADA with the knife raised over her head.

37. LOZADA made no attempt to retreat to a safe position or otherwise go back down the stairs to de-escalate the situation.

38. Instead, LOZADA pointed the gun at Mrs. Teel.

39. Mrs. Teel reacted by saying, "fuck you, shoot me."

40. LOZADA advised Mrs. Teel to stop, to which Mrs. Teel responded, "come on, just do it."

41. Thereafter, LOZADA fired three (3) rounds at Mrs. TEEL, and killed her.

42.     At the time LOZADA shot and killed Mrs. TEEL, LOZADA had at least two (2) non-lethal weapons in his possession: pepper spray and a taser, neither of which were utilized.

43.     As a result of the gunshot wounds, Mrs. TEEL was pronounced dead at 8:17 p.m. on July 26, 2018.

## IRCSO GENERAL ORDERS

44.     The force used by LOZADA was excessive, unreasonable, and in violation of Federal and State law, as well as accepted police practices within the United States including the IRCSO.

   a)     IRCSO General Order 4100.00 provides that the first deputy on scene shall (a) Assess and evaluate the situation. (b) Relay information to the Public Safety Dispatch Section, as necessary. (c) Request the shift supervisor to respond to the scene. LOZADA was the first deputy on the scene. LOZADA failed to follow these orders. If a supervisor responded to the scene, it was after LOZADA shot Mrs. TEEL.

   b)     IRCSO General Order 4100.58 provides that IRSO personnel shall take steps to calm the situation when encountering subjects who may be mentally ill, including those who are suicidal. "Give the subject some space, do not corner them. Where violence or destructive acts have not occurred, avoid physical contact, and take time to assess the situation." Further: "The subject should be handled calmly and spoken to in a reassuring voice. Try to establish a comfort zone by showing respect and dignity for the subject. Explain to the subject you are there to help them." LOZADA failed to follow this policy.

   c)     When responding to persons with mental illness, deputies are expected to deescalate the situation and determine danger. "The amount of control that the subject demonstrates is significant, particularly the amount of physical control over emotions of

rage, anger, fright or agitation. Signs of lack of control include extreme agitation, inability to sit still or communicate effectively, wide eyes, and rambling thoughts and speech." When LOZADA encountered Mrs. TEEL, she was lying face down on her bed. She was not agitated at that moment, she was not threatening.

45. Under the circumstances, LOZADA, in violating the rules and order of the IRCSO, unnecessarily placed himself in a dangerous place, and then after hearing Mrs. TEEL ask him to shoot her, complied.

46. LOZADO's conduct violated Mrs. TEEL's rights under the Fourth and Fourteenth Amendments to the United States Constitution, and were negligent in failing to follow IRCSO rules and orders.

## LOZADA'S HISTORY OF CONDUCT

47. LOZADA was hired by LOAR in July of 2012, after having participated in the IRCSO Explorer Post #556 program for four years.

48. LOZADA has a history of reports of excessive use of force incidents and/or wanton behavior, causing injuries, being reckless, in addition to violations of rules and regulations of the IRCSO, and was not counseled on correction of same by his supervisors, including LOAR. These incidents include, but are not necessarily the only incidents for which LOZADA was not counseled or corrected, the following:

   a. On December 9, 2015, LOZADA circumvented traffic control devices and reached speeds in excess of the posted limit, driving up to 91 miles per hour, on a routine call which did not warrant emergency response. This was a violation of IRCSO General Orders 4091.1 and 4091.00. LOZADA received eight (8) hours of suspension.

b. On January 31, 2016, LOZADA, while conducting a traffic stop, maneuvered his patrol vehicle in a reckless manner causing a citizen to strike his vehicle. A review of the in-car video revealed that the accident was avoidable. LOZADA, who had received suspension for reckless driving less than two (2) months prior to this incident, received a mere Letter of Counseling.

c. On June 1, 2016, LOZADA, while responding to an "Armed Robbery" with his trainee, not only failed to secure a crime scene but also assigned his trainee to assist K9 in the tracking of an armed robbery suspect. Both acts were in violation of IRCSO policies and procedures. It was noted that "this is the second incident in which Corporal Lozada has left his trainee in a situation that is not acceptable". Again, LOZADA received only a Letter of Counseling.

d. On December 3, 2016, LOZADA was present when another Deputy used excessive force by striking a citizen three (3) times in the face. LOZADA failed to complete the proper reports regarding the incident. In an Internal Affairs interview, LOZADA stated he "was so bothered by the whole incident… I kind of just shut down per say." LOZADA was suspended for 16 hours, received a Letter of Reprimand and was removed from Field Training Officer duty. LOZADA's mental issues related to the violations: being "bothered" by the situation and "shutting down," were matters left unaddressed by the IRCSO.

e. On March 20, 2017, LOZADA once again violated IRCSO policies and procedures during a vehicle pursuit, reaching speeds up to approximately 100 miles per hour while circumventing traffic at and near intersections, without regard to the safety

of others. Despite this incident being LOZADA's second violation related to vehicle pursuits in less than two years, IRCSO failed to discipline or counsel him.

f. On June 8, 2017, just seven (7) weeks prior to shooting and killing Mrs. TEEL, LOZADA was found to have "used an excessive or unnecessary degree of force to effectuate an arrest" when a suspect was wrestled to the ground and suffered injuries when his head struck the ground. LOZADA was charged with Unbecoming Conduct and Excessive Response Resulting in Injury. LOZADA received Remedial Training on Response to Resistance and discipline to include 40 hours of suspension. During the Internal Affairs investigation, LOZADA admitted to being "heightened" when he approached the suspect. He also admitted that after he injured the suspect: "I began to freak out… I was truly scared." Yet, during this "freak out," LOZADA was aware enough to *turn off his radio*, intentionally violating IRCSO rules. LOZADA admitted that while his radio was turned off, he was pacing and cursing at himself because "it was a lot for me to kind of take in." Other deputies on scene not only had to call for an ambulance to help the severely injured suspect, but also had to console LOZADA. Yet, the heightened situation existed only in LOZADA's mind, as other deputies on scene admitted there was no threat. The investigation found LOZADA's "heightened level of frustration prior to making contact with the driver… created the response to resistance versus preventing the response to resistance." This is a specific incident just weeks before Mrs. TEEL's death where LOZADA escalated a policing situation, resulting in severe injury to a citizen. LOZADA's mental and emotional state of mind was not addressed by IRCSO.

      g. By July 26, 2017, LOZADA had already been suspended for 56 hours in 2017.

49. Based on the foregoing accumulated history, LOAR or others with the IRCSO under his command should have taken action to restrict LOZADA's contact with the public, remediate LOZADA's behavior or terminate him, and such inaction directly caused these constitutional violations to TEEL by LOZADA.

50. IRCSO General Order 5151.00 provides:

> Any member of the Sheriff's office may be relieved from duty during an administrative investigation. This action may be determined by the member's Bureau Major, Division Captain/Director, Undersheriff, or Sheriff under the following conditions to include, but not be limited to:
> a. When an employee whose actions or response to resistance results in death or serious bodily injury to another person;
> b. Following insubordinate or other improper conduct which adversely affects the Sheriff's Office;
> c. When an allegation of misconduct is raised and it is in the best interest of the agency and/or the public; or
> d. When a member's normal faculties are reasonably believed to be impaired.

51. On July 26, 2017, IRCSO had two open Internal Affairs investigations on LOZADA. On the day LOZADA shot and killed Mrs. TEEL, he was still under investigation for the March 20, 2017 vehicle pursuit and for the June 8, 2017, incident in which he was accused of Excessive Response Resulting in Injury, but IRCSO, LOAR and LOZADA's IRCSO supervisors placed no restrictions on LOZADA'S contact with the public.

52. According to GO 5151.00 above, LOZADA should have been "relieved from duty" when his actions resulted in injury to another person on June 8. Furthermore, by July 26, several interviews had already been conducted in both investigations. One witness, Lt. William Luther, was interviewed on July 25, 2017, the day before Mrs. TEEL's death. In Lt. Luther's memorandum regarding the June 8 incident, he stated: "based on the force used I have determined this is not a

technique employed, taught or otherwise discussed during our in-service training blocks. The action he [LOZADA] employed rendered the subject unconscious which appeared excessive due to the lack of documented subject factors in the response to resistance report and case report if any existed."

53. The failure to act affirmatively to counsel, correct, discipline, suspend, or terminate LOZADA by LOAR and those superiors in the line of command between LOZADA and LOAR, all of whom ultimately serve at the pleasure of LOAR as Sheriff and as the highest constitutional law enforcement official for Indian River County, resulted in the tacit approval by LOAR of LOZADA's improper, reckless and unconstitutional behavior, and as such, became a de facto official policy of IRCSO.

54. LOAR and IRCSO knew that IRCSO deputies would respond to mentally ill persons and threats of suicide.

55. General Order 4100.00 classifies response to "armed suicidal persons" to be a "Crisis Situation." The first deputy on the scene is expected to "assess and evaluate the situation". Further, "[U]pon arrival at any incident that could be considered to be a crisis situation, it is important to be as accurate as possible when reporting on the assessment of the crisis." LOZADA did not report on the assessment of the crisis, because LOZADA failed to assess and evaluate the situation before running up the stairs of the TEEL residence, weapon drawn, and shooting Ms. TEEL three times within minutes of his arrival at the home.

56. LOAR and IRCSO knew IRCSO deputies would need training to educate said deputies on the response to such calls to ensure rights were not violated. Coincidentally, LOZADA signed off on his "Responding to Persons With Mental Illness" training on July 25, 2017, at 6:53 p.m., less than 24 hours before he shot and killed Ms. TEEL, a person with mental illness.

57.     However, on information and belief, LOAR and IRCSO made a conscious decision not to provide *sufficient* training and education to its deputies as to the lawful response to crisis situations and response to persons with mental illness.

58.     As a result of this failure to affirmatively train IRCSO deputies, including LOZADA, Mrs. TEEL's fundamental constitutional rights were infringed, including but not limited to, her rights under the Fourteenth Amendment of the United States Constitution, including the right to liberty, the right to be free from use of excessive force, and those fundamental rights of due process, liberty and life as guaranteed by the Constitution.

### COUNT I: VIOLATION OF 42 U.S.C. § 1983 DEPRIVATION OF PLAINTIFF'S CIVIL RIGHTS AGAINST DEFENDANT LOZADA

59.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 58 inclusive, as if fully set forth herein.

60.     The actions of LOZADA occurred within the scope of his employment with the IRCSO, having occurred within the authorized time and space limits of his duties and for a purpose to serve LOAR.

61.     This is an action for damages against Defendant LOZADA for the deprivation of Mrs. TEEL's Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

62.     While LOZADA was acting under color of state and federal law as deputy sheriff, he subjected Mrs. TEEL to the deprivation of rights and privileges, including the constitutional rights to not be deprived of her life, liberty and due process of law, and the constitutional right to be free from the excessive force against her person.

63.     LOZADA knew or should have known and every reasonable deputy sheriff in his position would have concluded that Mrs. Teel was mentally incapacitated at the time he entered her bedroom, and that she was a threat only to herself.

64. LOZADA knew or should have known Mrs. Teel's actions were a deliberate attempt to commit suicide, which no reasonable law enforcement officer would abide under the circumstances.

65. As a direct and proximate result of the above violations, Mrs. TEEL suffered physical injury, pain, suffering, emotional distress, disability and death.

66. The Plaintiff, DUDLEY TEEL, claims damages for the constitutional violations to, and wrongful death of, Mrs. TEEL under 42 U.S.C. § 1983, 42 U.S.C. § 1988.

WHEREFORE, Plaintiff, DUDLEY TEEL, as Personal Representative of the Estate of SUSAN TEEL, deceased, demands judgment for damages against Defendant LOZADA, whose constitutional violations, civil rights violations, misconduct, and acts and omissions as set forth herein and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees and further demands trial by jury on all issues so triable.

## COUNT II: 42 U.S.C. § 1983 DEPRIVATION OF PLAINTIFF'S CIVIL RIGHTS AGAINST LOAR

67. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 58 inclusive, as if fully set forth herein.

68. This is an action for damages against Defendant SHERIFF DERYL LOAR, in his official capacity as the Sheriff of Indian River County, for the deprivation of Mrs. TEEL's Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

69. At all material times, LOAR was responsible for IRCSO, its agents and employees, including supervising, overseeing, training and establishing policies, customs and procedures to conform their conduct to the United States Constitution and Florida common law.

70. At all times material, LOAR was charged with the responsibility of adopting and implements rules and procedures for the proper and efficient maintenance, supervision and control of the deputies of the IRCSO. These duties include, but are not limited to:

   a. To create, adopt and implement rules, regulations, practices and procedures, toward hiring and retaining law enforcement officers who do not have a propensity towards shooting citizens without cause, including LOZADA, who lacked sufficient training on the proper use of firearms, proper response to persons with mental illness, communications skills, and decision making skills.

   b. To create, adopt and implement rules and regulations, practices and procedures, for the proper and efficient training of law enforcement officers in a way and to an extent necessary to ensure the utilization of a force continuum which prevents any propensity towards violence and excessive force, and which ensures that the least amount of force would be utilized during an encounter with any citizen, including a person with mental illness.

   c. To create, adopt and implement rules and regulations, practices and procedures for the proper and efficient supervision, control, discipline and assignment of law enforcement officers in a way and to an extent necessary to ensure that citizen's will not be shot without cause and that unnecessary and wanton pain will not be inflicted on citizens, by the agents and employees of the IRCSO;

   d. To implement rules, regulations, policies, practices and procedures necessary to properly and fully investigate claims by citizens of the extreme and wanton acts of deputy sheriffs and all other employees of IRCSO; and

  e. Enforcing the rules, regulations, policies, practices and procedures when his deputy sheriffs are in violation of same.

71. LOAR owed a legal duty to Mrs. Teel to exercise reasonable care in hiring, training and retaining safe and competent employees. As a citizen of Indian River County subject to the daily authority possessed and utilized by Indian River County Sheriff's deputies, Ms. TEEL was in the foreseeable zone of risk that was reasonably foreseeable to LOAR. LOAR breached his aforesaid legal duties, and said breach(es) caused Teel's damages.

72. LOAR, with deliberate indifference, failed to adequately train or otherwise supervise and direct IRCSO and its deputy sheriffs concerning the rights of the citizens they encounter in their duties, such that it is a policy, practice and custom for deputy sheriffs, including LOZADA, to take extreme and reckless actions against the citizens they encounter, including Mrs. TEEL.

73. LOAR was on notice, by a history of widespread abuse, of the need to correct the extreme and reckless actions of IRCSO and its deputy sheriffs, and in particular LOZADA as to the citizens they encounter. This need for more or different training has been so obvious and the inadequacy of same, combined with LOAR's conscious choice not to act has resulted in the violation of constitutional rights, including, but not limited to the deprivation of Mrs. TEEL's civil rights.

74. In further disregard of the citizens that IRCSO and its deputy sheriffs encounter, LOAR had, with deliberate indifference, either failed to direct, failed to otherwise fully require, or has sought to limit, IRCSO and others in the proper investigation of the extreme and wanton acts of his deputy sheriffs, such that it is the policy, practice and custom of limiting investigations of deputy sheriffs with few or no serious questions raised as to deputy sheriff's actions or a deputy

sheriff's claims as to citizens they encounter. By limited and/or failing to investigate, resulting in findings of no excessive force, accepting deputy sheriff's word as gospel and otherwise adopting the justification for his deputy sheriff's extreme and wanton actions, LOAR ratified, condoned and consented to the deputy sheriff's unlawful conduct, including the ratification, condoning and consenting to the unlawful conduct of LOZADA as to Mrs. TEEL.

75. The aforementioned actions committed by LOZADA were proximately caused by the policies, customs and practices of LOAR in failing to fulfill his duties as alleged in the previous paragraphs of this Complaint.

76. The aforementioned policies, customs and practices of LOAR and the actions of LOZADA were the cause of Mrs. TEEL's death and Plaintiff's damages.

77. LOZADA has a history of reports of excessive use of force incidents causing injuries and violations of rules and regulations of the IRCSO, of which LOAR was aware. LOZADA was not counseled on correction of such excessive use of force causing injuries by his supervisors including LOAR.

78. In addition to the policies, customs and practices referenced above, LOAR was grossly negligent, reckless or deliberately indifferent to the health, safety and welfare of Mrs. TEEL in that LOAR expressly acknowledged and assented to the failure to properly train, supervise, control, screen and review for continued employment, the persona and conduct of LOZADA. As a result, LOAR had reason to know that LOZADA would act unlawfully and he failed to stop LOZADA's actions.

79. The gross negligence, recklessness and deliberate indifference of LOAR identified above was a further underlying cause of the constitutional torts committed by LOZADA and was the proximate cause of TEEL's injuries and damages noted above.

WHEREFORE, Plaintiff, DUDLEY TEEL, as Personal Representative of the Estate of SUSAN TEEL, deceased, demands judgment for damages against Defendant LOAR for all damages allowed by law including compensatory damages, punitive damages, costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

### **COUNT III: STATE WRONGFUL DEATH ACTION AGAINST LOAR**

80. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 58 inclusive, as if fully set forth herein.

81. At all times material, LOZADA, was working within the course and scope of his employment as law enforcement officer for IRCSO and Sheriff LOAR.

82. At all times material hereto, LOAR was charged with the responsibility and duty of adopting, implementing and enforcing rules and procedures for IRCSO deputies to ensure the safety and supervision of the public in Indian River County, including Mrs. TEEL.

83. Despite knowledge of LOZADA's history of IRCSO policy violations as stated above, LOAR breached his duty and acted with wanton and willful disregard for the safety of the public, including Mrs. TEEL, by failing to enact reasonable measures to prevent violations or enforce discipline for violations of policy by LOZADA that could cause injury to the public, or in the alternative, failed to remove LOZADA from service as a deputy.

84. LOAR is liable for LOZADA's actions during his encounter with Mrs. TEEL, including:

    a. Despite there being no immediate threat, LOZADA made an affirmative election to go upstairs and approach Mrs. Teel without a second deputy present.

    b. LOZADA made an affirmative election to engage Mrs. Teel with his firearm drawn.

    c. LOZADA made an affirmative election to use his firearm, i.e. deadly force, instead of his taser or pepper spray, i.e. non-deadly force.

    d. LOZADA made an affirmative election not to go back downstairs and wait for a second deputy rather than continuing to engage Mrs. Teel once he observed the knife.

    e. LOZADA made an affirmative election not to go back downstairs to deploy other non-lethal police resources available in mental health crisis situations, once he observed the knife.

    f. LOZADA made an affirmative election to fire three rounds at Mrs. Teel.

85. As a direct and proximate result of the negligence of LOAR, Mrs. Teel was killed in her bedroom door way, entitling her estate and survivors to recover all damages allowable under the Florida Wrongful Death Act.

86. Given the known employment history of LOZADA, LOAR and the IRCSO were negligent in the retention of LOZADA as a law enforcement officer, or at a minimum, were negligent in allowing LOZADA to respond to interact with members of the public in potentially volatile situations, and failed to place reasonable restrictions on LOZADA that would prevented him from being the first responder in an emotionally charged situation in light of his known inability to handle highly emotionally charged situations causing injuries to members of the public in the very recent past.

WHEREFORE, Plaintiff, DUDLEY TEEL, as Personal Representative of the Estate of SUSAN TEEL, deceased, demands judgment for damages against Defendant LOAR for all

damages allowable under the Florida Wrongful Death Act as well as any other relief the Court deems appropriate. Trial by jury is hereby demanded.

**WHEREFORE**, Plaintiff demands judgment against LOZADA and LOAR for actual compensatory damages, pain, suffering and emotional distress, attorney fees, costs, and demands a jury trial of all issues so triable.

### COUNT V: STATE WRONGFUL DEATH ACTION AGAINST LOZADA

87. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 58 inclusive, as if fully set forth herein.

88. At all times, LOZADA had a duty to act in a reasonable manner, including while he was on duty as a deputy sheriff with IRCSO.

89. LOZADA breached this duty, and exhibited wanton and willful disregard for the safety of Mrs. TEEL during the encounter on JULY 26, 2017 when he:

   a. Despite there being no immediate threat, LOZADA made an affirmative election to go upstairs and approach Mrs. Teel without a second deputy present.

   b. LOZADA made an affirmative election to engage Mrs. Teel with his firearm drawn.

   c. LOZADA made an affirmative election to use his firearm, i.e. deadly force, instead of his taser or pepper spray, i.e. non-deadly force or waiting for other non-lethal means of dealing with a suicide threat which posed no danger to anyone other than Mrs. Teel.

   d. LOZADA made an affirmative election not to go back downstairs and wait for a second deputy rather than continuing to engage Mrs. Teel once he observed the knife.

19

  e. LOZADA made an affirmative election to fire three rounds at Mrs. Teel.

90. As a direct and proximate result of the negligence of LOZADA, Mrs. Teel was killed in her bedroom door way, entitling her estate and survivors to recover all damages allowable under the Florida Wrongful Death Act.

WHEREFORE, Plaintiff, DUDLEY TEEL, as Personal Representative of the Estate of SUSAN TEEL, deceased, demands judgment for damages against Defendant LOZADA for all damages allowable under the Florida Wrongful Death Act as well as any other relief the Court deems appropriate. Trial by jury is hereby demanded.

## JURY DEMAND

A demand for a jury trial is hereby made.

Dated: September 10th, 2018.

*s/ Guy Bennett Rubin, Esq.*
Guy Bennett Rubin, Esq. (Florida Bar No. 691305)
grubin@rubinandrubin.com
Todd Norbraten, Esq. (Florida Bar No. 056605)
tnorbraten@rubinandrubin.com
Rubin & Rubin
PO Box 395
Stuart, Florida 34995
Telephone: (772) 283-2004
Facsimile: (772) 283-2009
*Attorneys for the Plaintiff, DUDLEY TEEL*